## Peterson *versus* Sinclair.

1. A balance due on a subscription to stock of a corporation is attachable as other debts are.

2. If there be a lien on the stock or a liability of the stock to others which may be set up as defence the subscriber must set it up in his relief, otherwise his subscription is attachable.

3. In cases of attachment execution the right to a separate trial by several garnishees is not of absolute right, but is a matter of discretion for the court, subject to review if that discretion is unjustly exercised.

January 10th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of July Term 1875, No. 140.

This was an attachment execution sur judgment, issued by Thomas and John Sinclair, trading as Sinclair & Son, against "The Saturday Post Publishing Company," defendant, and Pearson S. Peterson, Richard S. Peterson, Edward Norman, Francis H. Woodruff, John P. Taylor, and R. J. C. Walker, garnishees.

The corporation defendant was organized under the Act of July 18th 1863, Pamph. L. 1864, 1102.

The attachment was issued against the garnishees upon the basis that they were indebted to the corporation upon subscriptions for stock.

At the trial before Ludlow, P. J., it appeared that P. S. Peterson with others entered into articles of association for the purpose of forming the publishing company, with a capital of $40,000. All but two thousand dollars of this sum having been subscribed, Mr. H. Peterson, the president of the company, went to his brother Richard, and stating to him that he found that the organization of the company might fail for want of a subscription of $2000, asked him to subscribe that sum, and in the language of H. Peterson,

[Peterson v. Sinclair.]

when testifying, " he very generously, and solely in order to aid me, said that if his subscription for $2000 or $3000 would suffice to secure the sum needed, that I might subscribe for him that sum. I did not put his name in the agreement, for I never supposed there would be a question about the matter, but I considered him a subscriber, and I caused his name to be put with other subscribers in the annual statement, and this annual statement I signed."

This annual statement was made in pursuance of the require-. ments of the act under which the company was formed.

Mr. Richard Peterson never received any stock, although he paid $400 on his subscription. He never made any further payments thereon, but said at different times he would do so as soon as he was able.

Before proceeding to trial on behalf of P. S. and Richard Peterson, a motion was made, " that the issue between them and the plaintiff be tried separately from the issue between the other garnishees and the plaintiff," which the court refused.

The garnishees offered no evidence, but asked the court to charge the jury : " that any sum of money due by the garnishees as stockholders of The Saturday Post Publishing Company cannot be recovered in this proceeding."

The learned judge refused so to charge, adding [" that under the evidence it was for the jury to find whether or not any moneys belonging to the company, and if any, how much, was in the possession of] P. S. Peterson [R. Peterson] and F. Woodruff [at the time the attachment was served, and if the jury find there was then money of the company in the garnishee's hands, I instruct you that the plaintiffs can recover in this action.] This action is not brought to compel shareholders, out of their individual moneys, to pay the debts of the corporation to which they belong; that could not be done in this form of action. It is brought to compel persons who it is alleged hold money belonging to the company, to pay the same to a creditor of the company, and if you shall find that the garnishees have in their possession moneys belonging to the Post Publishing Company, the mere fact that the garnishees are also stockholders of the company does not prevent the plaintiff's recovery in this suit."

The verdict was for the plaintiff for $1600 against Richard Peterson, who took this writ, assigning for error the refusal of the motion for a separate trial, the portions of the foregoing charge in brackets and the refusal of the point submitted by the garnishees.

*David W. Sellers* and *Benjamin Harris Brewster*, for plaintiff in error.—Each issue in an attachment execution is separate, and is as though one garnishee was in the writ. The joinder of several garnishees does not defeat the right of each to his own venire : Cornelius v. Simpson, 3 Phila. 35 (1858).

[Peterson *v.* Sinclair.]

Parties who appear under different rights, should have them tried separately, and the varying facts should not be confused in their consideration.

The act under which this corporation was formed provides for *written* articles of association, which constitute the character of a subscriber or member; also for shares of capital stock, which are documentary; also for voting by proxy, authorized *in writing ;* also for the conduct of the corporate business by directors, the minutes of which are to be in writing, by a sworn clerk.

It is insisted upon that the manifest policy of the act is to cast all liability and privilege upon documentary evidence. If one claims the rights, or is charged with the obligations, of a subscriber or member, his character, *quoad hoc*, for benefits and burdens, is answered by the articles of association. If he has not signed these, no parol evidence will aid the omission.

If he is charged with the obligations, or claims the rights, of a stockholder, his character, *quoad hoc*, is determinable by his subscription to or his holding shares. If this is done by proxy (though the act does not seem to recognise such a mode), then the letter of attorney must be filed with the corporation, and must be executed. Informal understandings cannot aid the omission.

The court, however, left it to the jury to determine the whole question of liability, assuming in their charge that, if the conduct of the brothers made them, as between themselves, what Henry Peterson thought, then the jury could find a verdict on the basis there was money of the corporation in their hands.

These parties must conform to the statute that created them, and if they do not they are simply partners, and this is not the remedy. Could Peterson have acquired any right against the corporation by the conversation with his brother ? And if he could not, why then should he be bound thereby ? Should he be held to be liable, when he could have acquired no benefits ?

The general law provides that the assets of the insolvent corporation shall be rateably distributed. Before a bill can be filed to compel the enforcement of liability to such a corporation, an execution at law must issue and prove unavailing: Suydam *v.* Insurance Company, 1 P. F. Smith 394; Bayard's Appeal, 22 Id. 453. It is contended if Peterson was liable in any manner to the attaching creditor, that liability could alone be enforced in accordance with the 42d section of the act.

*E. Hunn Hanson* and *Daniel Dougherty*, for defendants in error:— There is nothing in the Act of Assembly of 16th June 1836 and its supplements relating to attachment execution, which required the court below to comply with the request made. The grant or refusal of such a motion is a matter of discretion, and therefore not the subject of review in error. In Cornelius *v.* Simpson, cited by the

[Peterson v. Sinclair.]

defendant, it is said that "there is nothing in the wording of the several Acts of Assembly on the subject that militates against a joint trial, while the inconvenience of several trials is too obvious to be dwelt upon."

The other assignments of error bring before the court but a single question, which is the supposed error in permitting the jury to find in this form of proceeding any verdict at all for the plaintiffs. The plaintiff in error asserted that he was liable if at all as a stockholder by force of those sections of the Act of 1864 which provide for enforcing the legal responsibility of a stockholder who has done or omitted to do the things enjoined by the act, and has thereby become personally liable to a creditor.

The distinction between the proceedings by attachment execution and those under the Act of 1863, is plain and broad. If the plaintiff in an attachment execution recovers at all, he recovers the money of the defendant which happens to be in the hands of the garnishee. But if the complainant in the proceedings contemplated by the Act of 1863 recover, he does not recover the money of the company, but the proper moneys of a stockholder, which he is obliged to pay because he has done or failed to do the things required by the Act of Assembly.

The two cases cited in the argument of plaintiff in error have no application to the case before the court. The decision in Suydam v. Insurance Co., 1 P. F. Smith 394, was a proceeding in equity to have certain funds declared trust funds for the payment of the company's debts. The case of Bayard's Appeal, 22 P. F. Smith 453, was a proceeding under the act approved 7th April 1870, which suspended the remedy by sequestration under the Act of 16th June 1836.

The judgment of the Supreme Court was entered, January 22d 1877,

PER CURIAM.—We are of opinion that a trial by a separate jury upon each issue by several garnishees, is not a matter of absolute right in cases of attachment execution. In this matter we must be guided by general practice, and by the great inconvenience and delay of execution, if every issue where there are many garnishees should necessarily be tried separately. It is one of those matters where some discretion must be exercised by the court below, subject to a review here, if that discretion be unjustly exercised. In this case no facts are set forth in the bill of exceptions to show that the power of the court was arbitrarily and unjustly exercised.

As to the debt attached, which is simply a balance of a subscription in money to stock of the corporation, the relation between the corporation and the subscriber is merely that of creditor and debtor. "The subscription (says Justice WOODWARD) is an ordinary con-

[Peterson *v*. Sinclair.]

tract of indebtedness :" Pittsburgh and Connellsville Railroad Company *v*. Byers, 8 Casey 22 ; or as he says in McCully *v*. Same Co., Id. 31 : "Subscribers to stock are on the same footing as other simple contract debtors." See also Same Co. *v*. Clark & Thaw, 5 Casey 151, and Graff *v*. Pittsburgh and Steubenville Railroad Co., 7 Casey 493. Debt or assumpsit lies on the contract of subscription according to its terms. This being an ordinary debt, it is attachable as other debts are. If there be a lien on the stock, or a liability of the stock to others, which may be set up as a defence, the subscriber must set it up in his relief, otherwise his subscription, having the characteristics of an ordinary contract, creating a debt, is attachable. The question as to a written subscription is not raised by the assignments of errors.

Judgment affirmed.